En el Tribunal Supremo de Puerto Rico

| EL PUEBLO DE PUERTO RICO<br>    Recurrido<br><br>    V.<br><br>GERARDO SERRANO CANCEL<br>FELIX SERRA SANTIAGO<br><br>    Peticionarios | Certiorari<br><br>99TSPR62 |

Número del Caso: CE-94-426

Abogados de la Parte Peticionaria: Lic. Carmen Ana Rodríguez Maldonado
Lic. Giovanni Irizarry Sierra
(Sociedad Para Asistencia Legal,
División de Apelaciones)

Abogados de la Parte Recurrida: Hon. Carlos Lugo Fiol
Procurador General

Lic. Delmarie Vega Lugo
Procuradora General Auxiliar

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Ponce

Juez del Tribunal de Primera Instancia: Hon. Francisco A. Padilla

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/23/1999

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

EL PUEBLO DE PUERTO RICO

    Recurrido

       v.                  CE-94-426      CERTIORARI

GERARDO SERRANO CANCEL;
FELIX SERRA SANTIAGO

    Acusados-peticionarios

**OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

San Juan, Puerto Rico a 23 de abril de 1999

**Se presenta ante nos un recurso de *certiorari* donde se solicita que revisemos una resolución dictada por el Tribunal Superior, Sala de Ponce, el 1 de junio de 1994[1]. Mediante la misma se <u>denegó</u> una m+oción de supresión de evidencia radicada por los acusados. <u>Revocamos</u>.**

**I**

**Contra los peticionarios del epígrafe, el ministerio público radicó ante el antiguo Tribunal**

---

[1] **Esta resolución fue dictada por el Hon. Juez Francisco A. Padilla, en el caso de El Pueblo de Puerto Rico v. Geraldo Serrano Cancel y Félix Serra Santiago; JLA93MO452-0453, JLA94G0143-144.**

Superior de Puerto Rico, Sala de Ponce, dos pliegos acusatorios mediante los cuales le imputó haber infringido las disposiciones de los Artículos 6 y 8 de la Ley de Armas de Puerto Rico[2].

Oportunamente, el 29 de abril de 1994, los acusados presentaron moción de supresión de evidencia ante el foro de instancia en la cual solicitaron la supresión del arma ocupada por ser la misma producto de un alegado arresto y registro ilegal e irrazonable.

En la vista de supresión de evidencia celebrada el 1 de junio de 1994, el Ministerio Público presentó los testimonios de los policías Julio Orengo Delgado y Altabán De Jesús Rodríguez, agentes que intervinieron con los

---

[2] Ley Núm. 427 de 19 de enero de 1951, 25 L.P.R.A. sec. 411, *et seq*. El referido Art. 8 de la Ley establece:

"Toda persona que porte, conduzca o transporte cualquier pistola, revólver o cualquier otra arma de fuego cargada o que porte, conduzca o transporte cualquier pistola, revólver, o cualquier otra arma de fuego y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver u otra arma de fuego, sin tener una licencia para portar armas expedida según más adelante se dispone, será culpable de delito grave." 25 L.P.R.A. sec. 418.

Ley Núm. 427 de 19 de enero de 1951, 25 L.P.R.A. sec. 411, *et seq*. El Art. 6 de la Ley establece:

"Toda persona que tenga o posea cualquier pistola, revólver u otra arma de fuego sin tener una licencia para ello expedida como más adelante se dispone, será culpable de delito menos grave, y si ha sido convicta con anterioridad de cualquier infracción a este Capítulo o de cualquiera de los delitos especificados en la sec. 427 de este título, o usare el arma en la comisión de uno de dichos delitos, será culpable de delito grave." 25 L.P.R.A. sec. 416.

acusados el día de los hechos. Del testimonio del Policía Julio Orengo Delgado surge lo siguiente: que el 13 de noviembre de 1993 entre las 7:25 y las 7:30 de la noche, estando él de turno y patrullando en un vehículo rotulado con su compañero Altabán de Jesús Rodríguez, recibió una llamada a través del radio de la patrulla; que la llamada se la hizo su compañero Alvarado quien le indicó que se había recibido una confidencia a los efectos de que frente al negocio "El Cañón" —ubicado en la calle Lorenza Biso en el sector Playa de Ponce— se encontraba estacionado un vehículo modelo Champ, color crema con líneas marrón, en cuyo interior había cuatro (4) individuos quienes, según la información recibida, estaban armados y esperando que una persona llegara al lugar para matarla; que él y su compañero de patrulla se encontraban como a dos (2) o tres (3) minutos del lugar y se dirigieron al sitio señalado; que al entrar a la calle Lorenza Biso venía un vehículo que "coincidía" con la descripción que le habían dado por el radio teléfono; que él, Orengo, que viajaba como pasajero de la patrulla, indicó a su compañero De Jesús que hiciera señas al conductor del vehículo crema para que se detuviera; que éste así lo hizo y el conductor del vehículo, el co-acusado Felix Serra Santiago, procedió a detenerse; que los cuatro (4) individuos se bajaron del automóvil, pero que no recuerda si fue voluntariamente o porque él y su compañero se lo pidieron; que cuando él, Orengo, se dirigía hacia el

conductor del vehículo, el individuo que se había desmontado del asiento del pasajero huyó hacia la calle Padre Noel; que él persiguió al individuo por alrededor de dos (2) minutos, no pudo alcanzarlo y regresó nuevamente a donde estaban las restantes personas con el policía De Jesús; que al regresar al grupo había unos cadetes en el lugar para dar refuerzos; que pasó por el lado izquierdo del vehículo detenido --el lado del pasajero-- y observó un arma de fuego encima del asiento trasero; que una vez se percató del arma indicó a De Jesús que procediera a arrestar a los individuos; que a éstos se les hicieron las advertencias de la ley y se ocupó el arma.

Del contrainterrogatorio que le hiciera la defensa al policía Orengo, surge que, antes de ordenar la detención del vehículo, él no tenía el número de tablilla del vehículo ni tenía la descripción de los individuos; que el vehículo estaba en movimiento cuando lo vio por primera vez y no iba a exceso de velocidad; que el propósito al detenerlo fue verificar la llamada del compañero Alvarado; que si en la declaración jurada que se le tomó dice que él les ordenó bajarse, así había sucedido; que ni su compañero --que se mantuvo en el lugar con las otras tres (3) personas-- ni los cadetes que llegaron como refuerzo, se habían percatado del arma que estaba encima del asiento trasero del auto durante el tiempo que él persiguió al cuarto individuo; que quien vio por primera vez el arma fue él, Orengo, cuando regresó de perseguir infructuosamente al pasajero que escapó.

Del interogatorio que hizo el fiscal al policía Altabán de Jesús Rodríguez surge básicamente lo mismo que declaró el policía Orengo Delgado. Además, surge lo siguiente: que ellos detuvieron a los individuos porque el vehículo donde viajaban tenía la misma descripción que había dado el retén Alvarado, había (4) personas en su interior y salía de la calle donde ubica el negocio frente al cual alegadamente se encontraba estacionado el carro al cual se refería la llamada; que él se quedó dando vigilancia[3] con otros compañeros que llegaron en esos instantes mientras su compañero se fue a perseguir al pasajero que se escapó y que luego del arresto se trasladaron al Cuartel de la Policía de la Playa, Precinto 258, donde él, De Jesús, continuó la investigación. En el contrainterrogatorio que hizo la defensa, De Jesús admitió que <u>no</u> tenía el número de tablilla <u>ni</u> la descripción de los individuos que ocupaban el vehículo.

Luego de escuchada la prueba y los argumentos de las partes, el Tribunal de Instancia declaró <u>no</u> ha lugar la moción de supresión de evidencia presentada por los acusados

---

[3]     De la transcripción de la vista sobre la moción de supresión de evidencia presentada por los acusados surge que en este sentido, el policía Altabán De Jesús testificó lo siguiente:

> "Nos quedamos dándole vigilancia a los otros tres individuos porque temíamos, por lo menos yo, porque no puedo pensar por los demás, <u>yo temía de que ellos fueran a salir corriendo también y lo que hacemos es que nos quedamos alrededor de ellos</u>.
> . . .

el 29 de abril de 1994. Dicho foro concluyó que, como cuestión de hecho y de derecho, era de aplicación la doctrina de "observación a plena vista" y que, como consecuencia de ello, el arresto de los acusados fue legal. Señaló el juicio para el 28 de julio de 1994.

Inconformes con el dictamen del Tribunal de Instancia, el 13 de junio de 1994 los acusados presentaron petición de *certiorari* ante este Tribunal señalando que:

> "Erró el Honorable Tribunal de Instancia al declarar sin lugar la supresión de evidencia, alegadamente ocupada por los agentes del orden público."

El 21 de julio de 1994, los peticionarios presentaron ante este Tribunal una moción en auxilio de jurisdicción solicitando la paralización de los procedimientos en el Tribunal Superior de Ponce hasta tanto este Tribunal pasara juicio sobre la cuestión planteada en la petición de *certiorari* instada por ellos. El 28 de julio de 1994, ordenamos la paralización de los procedimientos a nivel de instancia; ordenamos, además, que se elevara la transcripción de los procedimientos acaecidos en la vista sobre supresión de evidencia y concedimos al Procurador General de Puerto Rico el término de treinta (30) días para mostrar causa por la cual no debíamos expedir el auto solicitado y dictar sentencia revocatoria de la resolución recurrida.

---

Entonces nos quedamos allí para que ellos no fueran a irse. . ." (Enfasis nuestro.)

Habiendo comparecido el Procurador General y habiéndose elevado la transcripción de los procedimientos de la vista, procedemos a resolver.


## II

El Art. II, Sec. 10, de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico garantiza el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. Así, la referida disposición establece que la autoridad judicial sólo expedirá órdenes autorizando registros, allanamientos o arrestos cuando exista causa probable apoyada en juramento o afirmación. Estas órdenes tienen que describir particularmente el lugar que se registrará, las personas que se detendrán o las cosas que se ocuparán. De acuerdo a lo especificado en el citado precepto constitucional, la evidencia obtenida en violación de lo anterior es inadmisible en los tribunales.

Ahora bien, la regla general de que todo arresto válido debe estar precedido por la expedición de una orden judicial tiene una <u>excepción</u> establecida mediante legislación. Dicha excepción está contenida en la Regla 11 de Procedimiento Criminal, la cual establece:

> "Un funcionario del orden público podrá hacer un arresto sin la orden correspondiente:
>
> (a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá

hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario deberá solicitar que se expida una orden de arresto.

(b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia.

(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad." (Enfasis nuestro) 34 L.P.R.A. Ap. II, R.11.

En cuanto a la frase "motivos fundados" que menciona la regla hemos resuelto y expresado consistentemente que la misma significa la posesión de aquella información o conocimiento que lleven a una persona ordinaria y prudente a creer que la persona a ser detenida ha cometido un delito. Pueblo v. Cabrera Cepeda, 92 D.P.R. 70 (1965); Cepero v. Tribunal, 93 D.P.R. 245 (1966); Pueblo v. Del Río, 113 D.P.R. 684 (1980); Pueblo v. Martínez Torres, 120 D.P.R. 496 (1988); Pueblo v. Corraliza, 121 D.P.R. 244 (1988); Pueblo v. Ruiz Bosch, 127 D.P.R. 762 (1991).

Respecto a arrestos efectuados por agentes del orden público, como consecuencia de haber éstos recibido una "confidencia" sobre supuesta actividad delictiva, en Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977) este Tribunal adoptó la norma jurisprudencial federal utilizada para evaluar las circunstancias en que una confidencia puede servir de base para la existencia de causa probable. Dicha norma consiste de cuatro (4) criterios y, según originalmente expresado en Díaz Díaz, ante, basta la concurrencia de uno o más de éstos

para entender que la confidencia es suficiente para constituir causa probable. Los criterios son:

> "1) que el confidente previamente ha suministrado información correcta; 2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; 3) que la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes; y 4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse."

No obstante lo anterior, en <u>Pueblo</u> v. <u>Muñoz, Colón y Ocasio</u>, 131 D.P.R. 964 (1992)[4], este Tribunal <u>aclaró</u> que:

> "...aunque en nuestras decisiones hemos dicho que basta uno solo de los requisitos señalados en *Díaz Díaz, supra*, para que la información provista por un confidente anónimo sirva parcialmente de base para determinar válidamente la existencia de causa probable, <u>lo</u> cierto es que al aplicar la norma <u>siempre hemos exigido que la confidencia haya sido</u> <u>corroborada por el agente ya sea mediante</u> <u>observación personal o por información de otras</u> <u>fuentes.</u>"[5] (Enfasis en el original.)

Posteriormente, en <u>Pueblo</u> v. <u>Muñoz, Colón y Ocasio</u>, <u>ante</u>, expresamos que la corroboración <u>no debe limitarse a</u> <u>juzgar si la conducta observada es inocente o incriminatoria</u> <u>sino a evaluar el grado de sospecha que levantan todos</u> los

---

[4]    En este caso, la situación a la cual nos enfrentamos trataba de que unas declaraciones juradas que dieron base a la expedición de unas órdenes de arresto y allanamiento estuvieron basadas parcialmente en unas confidencias hechas a unos agentes.

[5]    En apoyo de lo anterior, en esta Opinión hacemos referencia a nuestras expresiones en <u>Pueblo</u> v. <u>Pagán y</u> <u>Ortiz</u>, 130 D.P.R. 470 (1992); <u>Pueblo</u> v. <u>Acevedo Escobar</u>, 112 D.P.R. 770 (1982) y en <u>Pueblo</u> v. <u>Díaz Díaz</u>, <u>ante</u>. En este último expresamos lo siguiente: "Coincidimos en que puede establecerse causa probable mediante prueba de una confidencia que aunque en su origen sea incompleta, unida a información ulterior obtenida por los agentes, en algún

actos de la persona objeto de la confidencia[6]. Aclaramos, que de la investigación policial no tiene que surgir evidencia suficiente para establecer causa probable; basta que la misma señale la presencia de una actividad sospechosa del carácter sugerido en la confidencia.

Lo expuesto en Pueblo v. Muñoz, Colón y Ocasio, ante, fue reiterado en Pueblo v. Ortiz Alvarado, Opinión y Sentencia de 1 de febrero de 1994. En esa ocasión, este Tribunal específicamente expresó:

> "En todos los casos donde hemos determinado, al amparo de los criterios establecidos en *Pueblo v. Díaz Díaz*, *supra*, que una confidencia ha sido suficiente para sostener la validez del arresto y allanamiento, los hechos reflejan que ha habido una corroboración de alguna actividad sospechosa del carácter sugerido en la confidencia."[7] (Enfasis nuestro.)

En Pueblo v. Ortiz Alvarado, ante, expresamos, además, que al momento de determinar si existe causa probable hay que hacerlo a base de criterios de razonabilidad. El tener meras sospechas no basta aunque tampoco es necesario convencer al juez, fuera de toda duda razonable, de que se está violando la ley, ni establecer que la ofensa imputada fue cometida en realidad. Lo verdaderamente importante es que el agente que efectúa el arresto y allanamiento sin

---

sentido o medida corrobore que la persona arrestada estaba en proceso de cometer un delito grave." (Enfasis nuestro.)

[6]    En apoyo, citamos a Illinois v. Gates, 462 U.S. 213 (1983).

[7]    En ese sentido, comentamos brevemente a Pueblo v. Díaz Díaz, ante; Pueblo v. Pagán y Ortiz, ante y los tres casos consolidados en Pueblo v. Muñoz, Colón y Ocasio, ante.

orden tenga --al momento de hacerlo-- base razonable o motivos fundados para creer que se estaba violando la ley. Es decir, si se desprende de la totalidad de las circunstancias que una persona prudente y razonable creería que se ha cometido o se va a cometer la ofensa objeto de las confidencias.[8]

Finalmente, es importante señalar que el hecho de que en un registro o allanamiento se encuentre evidencia delictiva no puede ser utilizado como fundamento para convalidar la ilegalidad del mismo. Pueblo v. Barrios, 72 D.P.R. 171 (1951); Pueblo v. González Rivera, 100 D.P.R. 651 (1972); Pueblo v. Castro Santiago, 123 D.P.R. 894 (1988); Pueblo v. Muñoz, Colón y Ocasio, ante; Pueblo v. Pacheco Báez, 130 D.P.R. 664 (1992); Pueblo v. Pagán y Ortiz, ante. Lo que debemos evaluar es la conducta previa al registro para determinar si efectivamente había causa probable o motivo fundado para llevarlo a cabo. Pueblo v. Ortiz Alvarado, ante.

III

El presente caso requiere un análisis, paso por paso, de la situación de hechos que desembocó en la ocupación del arma de fuego en controversia y la posterior radicación

---

[8] En apoyo de lo anterior, en Pueblo v. Ortiz Alvarado, ante, citamos a Pueblo v. Pagán Santiago, ante; Pueblo v. Rey Marrero, 109 D.P.R. 739 (1980); Pueblo v. Lastra Sáez, 93 D.P.R. 876 (1967) y Pueblo v. Tribunal Superior, 91 D.P.R. 19 (1964). Además, véase nuestra reciente decisión en Pueblo v. Santiago Avilés, Opinión y Sentencia de 2 de diciembre de 1998.

contra los peticionarios de acusaciones por infracciones a los Artículos 6 y 8 de la Ley de Armas, ello a la luz del vigente estado de derecho en nuestra jurisdicción.

Asumiendo, a los fines de la argumentación, que la Policía de Puerto Rico en efecto recibió la confidencia que alegan haber recibido --esto es, que frente a un negocio, conocido como "El Cañón" se encontraba estacionado un vehículo de motor, modelo Champ, color crema con líneas marrón, en cuyo interior habían cuatro (4) personas quienes estaban armadas y esperando por una persona para matarla-- y que, con posterioridad al recibo de la misma, los agentes del orden público observaron, cerca del lugar mencionado, un vehículo de motor en movimiento, que respondía a la descripción brindada, con cuatro personas en su interior, procede que nos cuestionemos, en primer lugar, si la Policía legalmente podía, sin más, proceder a la detención del vehículo y de sus ocupantes.

La contestación a dicha interrogante tiene que ser en la negativa; ello en vista de las garantías que emanan de nuestra Constitución, en específico, de la Sección 10 del Artículo II de la misma; de las disposiciones de la Regla 11 de las Reglas de Procedimiento Criminal; y de la jurisprudencia de este Tribunal sobre el asunto en controversia.

Nuestra Constitución establece, como regla general, que el arresto de un ciudadano y la incautación de propiedad delictiva perteneciente a éste únicamente podrá hacerse

mediante previa orden judicial al efecto, fundada ésta en la existencia de causa probable. La citada Regla 11 de Procedimiento Criminal establece una excepción a dicha regla general, a saber: la existencia de "motivos fundados", de parte de un funcionario, para arrestar sin orden previa al ciudadano; arresto que permite el registro, incidental al mismo, del área bajo el control y al alcance del arrestado.

Nuestra jurisprudencia ha ido en evolución. Así, hemos permitido que la causa probable o motivos fundados puedan tener como base de origen una "confidencia"; esto es, información que brindan los ciudadanos a los agentes del orden público sobre posible actividad delictiva. Pueblo v. Díaz Díaz, ante. Ello no obstante, y con el obvio propósito de evitar desmanes y abusos, la norma imperante en nuestra jurisdicción es a los efectos de que, aun cuando se permite que una confidencia sirva de base para una intervención policiaca, los agentes del orden público deben "corroborar" la información brindada, exigiéndose que al así hacerlo exista, como condición para la intervención, la corroboración de alguna actividad sospechosa o delictiva. Véase: Pueblo v. Muñoz, Colón y Ocasio, ante; Pueblo v. Ortiz Alvarado, ante.

Ello debe quedar meridianamente claro. Una confidencia sobre posible actividad delictiva, por sí sola, no es suficiente para privar de su libertad a uno de nuestros conciudadanos; tiene que haber corroboración de actividad sospechosa o delictiva. En otras palabras, la confidencia

recibida no se corrobora con cualquier información que tienda a establecer que, alguna parte del contenido de la misma, es veraz. Tiene que haber, repetimos, corroboración de actividad sospechosa.[9]

Este, precisamente, es el punto neurálgico de la situación de hechos a la cual nos enfrentamos en el presente caso. En las observaciones que hizo la Policía, luego de recibirse la supuesta confidencia, brilla por su ausencia la corroboración de actividad sospechosa o delictiva de parte de los ocupantes del vehículo en cuestión. En el testimonio prestado por los agentes del orden público no existe un hecho, ni tan siquiera utilizando una ávida imaginación, del cual se pueda inferir la corroboración de actividad sospechosa de parte de dichos agentes. Estos meramente pudieron comprobar que, en las cercanías del negocio mencionado en la confidencia, transitaba un vehículo de motor, ocupado por cuatro personas, parecido o similar al automóvil mencionado en la confidencia.

Procede que se enfatice el hecho de que la situación sería la misma aun cuando en la confidencia se hubiera brindado --lo que no se hizo-- el número de tablilla del

_____

[9] Nada mejor que un ejemplo para ilustrar la consecuencia trágica de la posición contraria. Digamos que la Policía recibe una confidencia de que Juanito Trucupey, quien transita por la calle San Sebastián, en un Honda color rojo con líneas fosforescentes, pretende hacer como Nerón e incendiar un establecimiento comercial allí ubicado. Si no se requiriera la corroboración de conducta sospechosa, bastaría con que un miembro de la Policía observara a Juanito conducir en un Honda color rojo con líneas fosforescentes para que existiera causa probable para el arresto de éste.

vehículo y una descripción de los ocupantes del mismo. Sin duda, la tenencia de dicha información hubiera hecho que la confidencia fuera una más completa. Ello no obstante, esa información adicional no hubiera subsanado, ni subsana, la grave falla existente de falta de corroboración de actividad delictiva.[10]

Establecido lo anterior, forzosa resulta la conclusión de que la intervención que realizó la Policía en el presente caso, al ordenar la detención del vehículo, y el posterior arresto de los ocupantes del referido automóvil, fueron ilegales. Recordemos que los agentes privaron de movimiento a, por lo menos, tres de los cuatro ocupantes. Como hemos visto, no había motivo alguna para detener el vehículo; tampoco para arrestar a los ocupantes del mismo. Debe mantenerse presente que, desde hace más de cuarenta (40) años, este Tribunal resolvió que el concepto de detención, para investigación, de una persona es algo ajeno a nuestro sistema de derecho. Pueblo v. Fournier, 77 D.P.R. 22 (1954).

---

[10] La posición que sostiene el Procurador General, a los efectos de que la intervención realizada fue legal por razón de que se trataba de darle muerte a un ser humano, es completamente inmeritoria. Esta postura, adoptada por la Minoría, en esencia nos invita a crear un nuevo estándar en casos de confidencias: si la confidencia es sobre un posible asesinato, no es necesario corroborar actividad sospechosa.

No es que estemos proponiendo que hay que esperar que "la sangre llegue al río". Lo que estamos resolviendo es que tiene que haber un balance para que la intervención del Estado con nuestros ciudadanos sea legítima.

Ese balance proviene de la exigencia de que exista motivos fundados o causa probable, la cual, en casos de

Siendo ello así, la posterior ocupación del arma de fuego en el vehículo ilegalmente detenido resulta ser <u>igualmente ilegal</u>. Esto por <u>dos</u> razones, a saber: en <u>primer</u> lugar, habiéndose determinado que el arresto efectuado fue ilegal, <u>no</u> cabe hablar del registro, o la ocupación de evidencia, incidental a un arresto legal; registro que incluye no sólo la persona del arrestado sino que el área bajo el control y al alcance de éste. <u>Pueblo</u> v. <u>Pacheco Báez</u>, <u>ante</u>, pág. 670. En <u>segundo</u> término, la ocupación del arma en el presente caso es <u>consecuencia directa de la acción ilegal original de detener el vehículo</u>; esto es, la ocupación realizada es "fruto del árbol ponzoñoso". Véase: Sección 10 del Artículo II de nuestra Constitución; <u>Pueblo</u> v. <u>Miranda Alvarado</u>, Opinión y Sentencia de 2 de junio de 1997; Resumil de Sanfilippo, O., <u>Práctica Jurídica de Puerto Rico, Derecho Procesal Penal</u>, Equity Publishing Co., 1990, Tomo I, pág. 306; Chiesa Aponte, E., <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, 1[era] ed., Colombia, Tercer Mundo Editores, 1991, Vol. I, pág. 317.

Por otro lado, debe quedar claro que, <u>dados los hechos particulares del presente caso</u>, la doctrina de "evidencia ilegal a plena vista" <u>no</u> es de aplicación al mismo. En <u>Pueblo</u> v. <u>Dolce</u>, 105 D.P.R. 422 (1976), establecimos los <u>requisitos</u> necesarios para la aplicación de la referida doctrina, a saber:

_____

confidencias, se logra con la exigencia de corroboración de actividad delictiva.

>(1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observe la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba; (3) debe descubrirse el objeto inadvertidamente; y (4) la naturaleza delictiva del objeto debe surgir de la simple observación.

Como podemos notar, no se cumple con el segundo de los requisitos. El agente del orden público no tenía derecho a estar en el lugar desde donde alegadamente observó la pistola que supuestamente estaba sobre el asiento del vehículo detenido; ello así por cuanto no había tenido motivo válido alguno para haber ordenado la detención del vehículo.

Por último, y desde otra perspectiva, nosotros los jueces no debemos creer algo que nadie más creería. Pueblo v. Luciano Arroyo, 83 D.P.R. 573 (1961). Nos referimos, naturalmente, al testimonio del Agente Orengo Delgado quien testificó que, luego de regresar de infructuosamente perseguir al cuarto de los ocupantes del vehículo, pudo convenientemente observar un arma de fuego sobre el asiento del automóvil detenido.

Resulta, cuando menos, difícil de creer dicha versión. Como surge de la relación de hechos, a la escena acudieron varias patrullas. Es un tanto difícil de creer que estos policías, que permanecieron en el lugar custodiando a los otros ocupantes del vehículo detenido, los cuales alegadamente planeaban asesinar a una persona, no hubieran observado el arma de fuego sobre el asiento del carro

intervenido antes de que regresara al lugar el Policía Orengo Delgado.

Por los fundamentos antes expresados, se <u>revoca</u> la resolución emitida por el tribunal de instancia, de fecha 1ro. de junio de 1994, denegatoria la misma de la moción de supresión de evidencia radicada; devolviéndose el caso al referido foro para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

EL PUEBLO DE PUERTO RICO

    Recurrido

        v.                                 CE-94-426    CERTIORARI

GERARDO SERRANO CANCEL;
FELIX SERRA SANTIAGO

    Acusados-peticionarios

SENTENCIA

San Juan, Puerto Rico a 23 de abril de 1999

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la resolución emitida por el extinto Tribunal Superior de Puerto Rico, Sala de Ponce, de fecha 1ro. de junio de 1994, denegatoria la misma de la moción de supresión de evidencia radicada y se devuelve el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.

       Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión disidente a la cual se unieron los Jueces Asociados señora Naveira de Rodón y señor Corrada del Río.

                        Isabel Llompart Zeno
               Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Demandante-recurrido

                            CE-94-426      Certiorari

     v.

Geraldo Serrano Cancel;
Félix Serra Santiago

     Demandados-peticionarios

**Opinión Disidente del Juez Asociado señor Negrón García, a la cual se unen la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Corrada del Río**

San Juan, Puerto Rico, a 23 de abril de 1999

**Contrario a lo concluido por la mayoría del Tribunal, la confidencia anónima recibida fue amplia y satisfactoriamente corroborada por las observaciones directas de la policía.** Pueblo v. Meléndez Rodríguez, res. en 13 de julio de 1994; Pueblo v. Muñoz Santiago, res. en 6 de noviembre de 1992. La detención y eventual arresto de los acusados Geraldo Serrano Cancel y Félix Serra Santiago son válidos. Fundamentemos.

I

De entrada, no se cuestiona que el Ministerio Fiscal **inequívocamente probó** que los policías Julio A. Orengo Delgado y Altabán De Jesús Rodríguez recibieron en su auto-patrulla información de confidencia anónima

de que frente al negocio "El Cañón", en la Calle Lorenza Biso, Sector Playa, Ponce, estaba estacionado un vehículo Champ, color crema con líneas marrón, en cuyo interior había cuatro (4) individuos armados esperando una persona para matarla (T.E., 2-3; 23). **Dos (2) ó tres (3) minutos después, al dirigirse a investigar, mientras entraban a la Calle Lorenza Biso, se confrontaron con un automóvil cuya descripción coincidía exactamente con la confidencia recibida, en términos de modelo y colores específicos del automóvil y en cuyo interior viajaban cuatro individuos. Salían precisamente de la mencionada Calle Lorenza Biso, prácticamente del frente del negocio "El Cañón" (T.E., 24). No cabe duda alguna que esas observaciones contemporáneas corroboraron la confidencia y constituyeron razones fundadas suficientes para ordenarles detenerse para ser investigados. (T.E. 3-4; 24).**

El siguiente cuadro comparativo lo ilustra claramente:

| *Información de Confidencia Anónima Transmitida a Radio-Patrulla* | | *Realidad corroborada por los Policías antes de detener auto para investigación* |
|---|---|---|
| Sitio: | Negocio "El Cañón" | Automóvil salía prácticamente del Negocio "El Cañón" |
| Calle: | Lorenza Biso | Lorenza Biso |
| Sector: | Playa de Ponce | Playa de Ponce |
| Vehículo: | Modelo Champ | Modelo Champ |
| Descripción: | Color crema | Color crema |
| Distintivo: | Líneas marrón | Líneas marrón |
| Componentes: | Cuatro (4) personas armadas | Cuatro (4) personas (se observó y ocupó subsiguientemente encima de asiento trasero arma: Pistola automática Erfurt con peine cargado grande. Tamaño más de un (1) pié) |
| Motivo: | Estacionado frente a negocio esperando para matar a una persona | Posible asesinato frustrado por la oportuna investigación e intervención policiaca |

En <u>Pueblo</u> v. <u>Ortiz Alvarado</u>, res. en 1 de febrero de 1994, reiteramos así lo expresado en <u>Pueblo</u> v. <u>Díaz Díaz</u>, 106 D.P.R. 348, 354 (1977):

"[U]na confidencia es suficiente para validar la existencia de causa probable si se establece la concurrencia de una o más de las siguientes circunstancias: (1) que el confidente ha suministrado información correcta; (2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; (3) que la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes; y (4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse."

Aún así, la mayoría anula la actuación de la policía porque la confidencia no suministró el número de la tablilla ni año del vehículo, ni una descripción física de sus ocupantes. **Deferencialmente consideramos esas exigencias un absurdo, que en abstracto no toma en cuenta la urgencia y fluidez situacional de la actividad criminosa en movimiento.** Ante la pronta respuesta de la policía, proximidad del sitio y **exactitud** de la información corroborada, requerirles también que para detener dicho vehículo de **noche**, necesitaban tener **además**, la tablilla, año y descripción de sus ocupantes, es simplemente paralizar el proceso investigativo e imposibilitarle realizar efectivamente su labor de prevención. **Casi equivale a tener que hacer una rueda de identificación ("line up") nocturnal en la vía pública.**

La decisión mayoritaria es contraria a la normativa expuesta en Pueblo v. Ortiz Martínez, 116 D.P.R. 139 (1985) y Pueblo v. Ruiz Bosch, res. en 25 de enero de 1991, la cual reconoce que la policía tiene el deber de investigar toda información, confidencia o querella sobre posible actividad delictiva, dirigirse al lugar de los hechos y preguntar a las personas allí encontradas.

En resumen, la información recibida por la policía indicaba que cuatro individuos en un automóvil adecuadamente descrito estaban armados esperando a alguien para matarlo. Ello, unido a la inmediatez y corroboración producto de la observación personal de los agentes y experiencia, convirtió la sospecha en una **inferencia razonable de motivos fundados para creer que se había cometido o estaban cometiendo los delitos graves objetos de la confidencia, a saber posesión ilegal de arma y tentativa de asesinato.** Cf. Pueblo v. Pagán Santiago, res. en 20 de mayo de 1992.

Como correctamente señala el Procurador General: "En este caso se trataba de la posibilidad de darle muerte a un ser humano. ¿Qué tipo de actividad adicional había que esperar para poder intervenir con estos individuos? ¿Habría que esperar que comenzaran a disparar y fuesen más de una las personas heridas?" (Informe, pág. 7).

II

Finalmente, nos preocupa el **argumento conclusorio** mayoritario de que el testimonio del policía Orengo Delgado es estereotipado. **Primero,** representa una intervención injustificada de este foro apelativo con la apreciación y aquilatación de la prueba testifical del ilustrado Tribunal de Instancia. **Segundo,** un reflexivo examen de la transcripción (interrogatorio y contrainterrogatorio), **no revela un solo elemento indicador para desmerecer y no darle crédito a su testimonio. Tercero,** existe una explicación sensata para que ningún otro agente se percatara antes del arma. **La prueba incontrovertidamente reveló que dichos agentes se quedaron vigilando en la acera a los acusados debido a que ya uno de los ocupantes del vehículo había huido. Ninguno se acercó al vehículo.** Fue cuando el policía Orengo Delgado regresó –luego de tratar de capturarlo–, que al pasar, vio la pistola automática grande en el asiento trasero.

**A estos hechos aplica la doctrina de evidencia ilegal a plena vista:**[11] el arma fue descubierta por estar plenamente visible y no fue en el curso o por razón de un registro; el agente tenía derecho a pasar por allí y estar en posición de verla; y surgió de una simple

---

[11] El arma fue vista cuando el agente Orengo Delgado al regresar de perseguir a uno de los cuatro individuos, pasó por el lado del vehículo y la vio encima del asiento trasero (T.E., 7, 9, 11). El agente Altabán De Jesús **confirmó** lo declarado por el agente Orengo Delgado al testificar que cuando éste último regresó, pasó por el lado del vehículo y observó allí el arma de fuego (T.E., 26). **Ningún otro agente la había visto antes debido a que no hicieron registro alguno.** El agente Altabán De Jesús, junto a otros cadetes de la policía, vigilaba a los individuos para que éstos no huyeran.

La prueba demostró que tampoco se efectuó "cacheo". Hasta ese momento no se había realizado registro de las personas ni en el automóvil.

observación. <u>Pueblo</u> v. <u>Cruz Torres</u>, res. en 14 de septiembre de 1994; <u>Pueblo</u> v. <u>Muñoz Santiago</u>, <u>supra</u>; <u>Pueblo</u> v. <u>Malavé González</u>, 120 D.P.R. 470 (1988); <u>Pueblo</u> v. <u>Dolce</u>, 105 D.P.R. 422 (1976).


ANTONIO S. NEGRON GARCIA
Juez Asociado