Voto particular disidente emitido por la
Juez Asociada Se-ñora Rodríguez Rodríguez,
al cual se une el Juez Presi-dente Señor Hernández Denton.
Disiento del curso seguido por una mayoría de este Tribunal por entender que los derechos constitucionales de dos individuos se verían altamente afectados. No debemos olvidar que esos derechos que una mayoría de esta Curia decide no reconocer, según el proceder en este caso, funda-mentan su existencia en la aplicación por igual a todo ciudadano.
I
El 28 de noviembre de 2011, Israel García Ojeda pre-sentó ante este Tribunal un recurso de certiorari junto con una moción urgente en auxilio de jurisdicción. En esta úl-tima solicita que paralicemos un pre-trial señalado para el 5 de diciembre de 2011 en el Tribunal de Primera Instan-cia, Sala Superior de Bayamón, en lo que atendemos el recurso de certiorari. En dicho recurso, el peticionario soli-cita que revoquemos una determinación del Tribunal de Apelaciones(1) que revocó la resolución dictada por el Tribunal de Primera Instancia (TPI), en donde dicho foro de-claró con lugar una solicitud de supresión de evidencia.
Por hechos ocurridos presuntamente el 20 de diciembre de 2010, el Ministerio Público presentó varias denuncias *603 contra el peticionario y Emmanuel Morales Acevedo por infracciones a la Ley de Armas de Puerto Rico, Ley Núm. 404 de 11 de septiembre de 2000 (25 L.P.R.A. sec. 455 et seq.). Tras la determinación de causa probable en vista pre-liminar y la presentación de las respectivas acusaciones, los acusados presentaron sendas mociones para solicitar la supresión de la evidencia incautada. En éstas alegaron que la evidencia obtenida fue producto de una intervención ba-sada en una confidencia anónima que no se corroboró y que el registro fue ilegal por no haber motivos fundados para la detención sin orden judicial. En la vista de supresión de evidencia declararon los agentes José J. Cabrera García, Julio Cantres Rivera y Luis Domínguez. Veamos cada de-claración por separado.
En síntesis, el agente Cabrera declaró que el 20 de diciembre de 2010 él trabajaba como retén del radio operador del cuartel de Toa Alta cuando alrededor de la 1:05 pm recibió una llamada anónima con voz de hombre y que le indicó que en la Avenida Toa Alta Heights había un vehí-culo tipo minivan parecido a una Caravan, en cuyo interior se escuchaba a una dama gritar y pedir auxilio, y dos indi-viduos, uno de los cuales portaba un arma de fuego.(2) Cabrera cursó la información a través del radio operador y luego los agentes Cantres y Domínguez indicaron que iban a intervenir con un vehículo similar al de las descripciones. En el contrainterrogatorio, el agente Cabrera indicó que el informante nunca le dio el número de tablilla del vehículo ni la descripción física de las personas dentro del vehículo. Asimismo, declaró que el informante nunca se identificó ni pudo corroborar si la persona había dado información anteriormente. El agente tampoco anotó la llamada en la bitácora de recibir llamadas anónimas porque en ese cuar-tel no se utiliza ninguna bitácora para esos fines, a pesar de que en otros cuarteles sí. Cuando los agentes Cantres y *604 Domínguez se personaron al lugar y se comunicaron con Cabrera, nunca le dijeron si en efecto había una dama pi-diendo auxilio. Tampoco le pidieron refuerzos.
Por su parte, el agente Cantres declaró que mientras patrullaba con Domínguez recibió a través del radio opera-dor la información ofrecida por el confidente.(3) Indicó que nunca le dieron el número de tablilla, la descripción física de las personas dentro del vehículo ni el número de puer-tas del vehículo.(4) Al dar con un vehículo minivan blanco en el lugar indicado, el agente Cantres se bajó de la patru-lla y percibió a dos hombres en la parte delantera del ve-hículo y a una dama en el asiento de atrás. Declaró que antes de intervenir en la escena, el vehículo estaba apa-gado y que no se había cometido ningún tipo de violación de ley, incluso la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 de 7 de enero de 2000 (9 L.P.R.A. sec. 5001 et seq.). Asimismo, declaró que la dama no gritaba ni pedía ayuda, nadie forcejeaba con ella, sus vestiduras no estaban rotas ni había muestra de violencia alguna hacia ella, aunque ella sí se veía exhausta, como desesperada, nerviosa y sudorosa.(5) Al acercarse por el lado del conductor se percató que debajo de la pierna del pasajero se no-taba como las cachas de un arma de fuego.(6) Al percibir eso, se lo indica a su compañero Domínguez y éste procede a ocupar el arma y arrestar al pasajero (Israel García). Cantres ordena al conductor (Emmanuel Morales) que se baje del vehículo y cuando éste lo hace, Cantres le ocupa un arma de fuego que estaba debajo del muslo del conductor.
*605 Luego de arrestar a los acusados, se arresta también a la dama, quien resultó ser hermana del aquí peticionario (Israel García). Sin embargo, nunca se le preguntó a ella si era la persona que había estado gritando.(7) Posterior al arresto de las tres personas y en el mismo lugar de los hechos (por lo tanto, previo a transportar el vehículo al cuartel para realizar el inventario adecuado), Cantres ob-servó un bulto negro entre las sillas delanteras, que estaba abierto con una bolsa ziplock y balas adentro. Procedió a incautarlo también.
El agente Domínguez hizo declaraciones similares a las de Cantres. Sin embargo, contrario a lo declarado por Can-tres y Cabrera, y a preguntas del juez que presidió la vista, Domínguez declaró que la información recibida por el retén íue sólo sobre la minivan blanca, el lugar donde se encon-traba y la mujer que gritaba.(8) No mencionó nada sobre el supuesto hombre con un arma de fuego dentro de la minivan. A preguntas del juez sobre si eso fue lo único que recibieron por parte del retén, el agente respondió en la afirmativa. (9) Domínguez igual declaró que al llegar a la escena no había signos de violencia en la dama, no se ob-servaba nada sospechoso en relación con la información transmitida por radio, no había notado nada delictivo den-tro del automóvili(10) ni vio el arma de fuego debajo del muslo del conductor ni las cachas de un arma debajo de la pierna del pasajero, según la versión de Cantres. No fue hasta que Cantres le menciona lo de las cachas del arma, que Domínguez le ordena al pasajero bajarse del vehículo. *606 En cuanto al supuesto bulto negro que estaba abierto den-tro del vehículo, Domínguez declaró que lo incautaron des-pués que los tres ocupantes del carro ya estaban arrestados. Incluso, el agente testificó que de la interven-ción que Cantres y él realizaron ninguno tomó notas ni apuntes sobre lo sucedido.(11)
El Art. II, Sec. 10, de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, garantiza el derecho del pueblo a la pro-tección de sus personas, casas, papeles y efectos contra re-gistros, incautaciones y allanamientos irrazonables. Igual dispone que por autoridad judicial sólo se expedirán órde-nes autorizando registros, allanamientos o arrestos cuando exista causa probable apoyada en juramento o afirmación. Dicha sección finaliza plasmando que la evidencia obte-nida en violación de lo anterior es inadmisible en los tribunales. Esta norma general de la Constitución tiene como excepción lo establecido en la Regla 11 de Procedi-miento Criminal, 34 L.P.R.A. Ap. II. En cuanto a la frase motivos fundados que menciona la Regla 11, hemos expre-sado consistentemente que significa la posesión de aquella información o conocimiento que lleven a una persona ordi-naria y prudente a creer que la persona a ser detenida ha cometido un delito. Pueblo v. Serrano, Serra, 148 D.P.R. 173, 182-183 (1999).
Respecto a los arrestos que efectúen agentes del orden público cuando reciban una confidencia sobre una su-puesta actividad delictiva, en Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977), este Tribunal adoptó una norma de cua-tro criterios para evaluar las circunstancias en que una confidencia puede servir de base para la existencia de causa probable. Los criterios son: (1) que el confidente pre-viamente ha suministrado información correcta; (2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; (3) que la confidencia ha sido corroborada por *607 observaciones del agente, o por información proveniente de otras fuentes, y (4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse. Pos-teriormente, en Pueblo v. Muñoz, Colón y Ocasio, 131 D.P.R. 965 (1992), reafirmado en Pueblo v. Ortiz Alvarado, 135 D.P.R. 41 (1994), expresamos que siempre hemos exi-gido que el agente haya corroborado la confidencia, ya sea mediante observación personal o por información de otras fuentes. Más aún, en Pueblo v. Ortiz Alvarado expresamos que al momento de determinar si existe causa probable hay que hacerlo a base de criterios de razonabilidad, puesto que tener meras sospechas no basta.
Finalmente, es importante señalar que el hecho de que en un registro o allanamiento se encuentre evidencia delic-tiva no se puede utilizar como fundamento para convalidar su ilegalidad. Pueblo v. Serrano, Serra, ante, pág. 185. Lo que debemos evaluar es la conducta previa al registro para determinar si efectivamente había causa probable o motivo fundado para llevarlo a cabo. Id.
Es preciso analizar los hechos de este caso según el de-recho vigente para determinar si la intervención y posterior incautación de la evidencia fue legal o no. De entrada, concurrimos con la interpretación del Tribunal de Primera Instancia a los efectos de que las declaraciones de los agen-tes en la vista de supresión de evidencia denotan contra-dicciones en cuanto a la información que el agente Cabrera les brindó por radio. La presente controversia es similar al caso Pueblo v. Serrano, Serra, ante. En aquel caso, tonos agentes recibieron confidencias acerca de un vehículo cu-yos ocupantes tenían armas de fuego. El confidente no in-formó el número de tablilla del vehículo ni la descripción física de los ocupantes, sólo el color del vehículo y el lugar donde se encontraba. Los agentes de la Policía vieron un vehículo similar en el lugar indicado e intervinieron con los ocupantes. Allí, igual incautaron unas armas de fuego ilegales. Este Tribunal examinó los hechos y determinó que *608 la intervención fue contraria a derecho puesto que los agentes no tenían motivos fundados razonables para inter-venir con los ocupantes del vehículo, ya que no corrobora-ron la confidencia recibida. Sostuvo el Tribunal en dicho caso:
Una confidencia sobre posible actividad delictiva, por sí sola, no es suficiente para privar de su libertad a uno de nuestros conciudadanos; tiene que haber corroboración de actividad sos-pechosa o delictiva. En otras palabras, la confidencia recibida no se corrobora con cualquier información que tienda a esta-blecer que, alguna parte del contenido de la misma, es veraz. Tiene que haber, repetimos, corroboración de actividad sospechosa. (Enfasis suplido y en el original.) Pueblo v. Serrano, Serra, ante, pág. 187.
Tras determinar que no había motivos fundados para intervenir con el vehículo, este Tribunal concluyó que tam-poco se satisfacía la aplicación de la doctrina de evidencia ilegal a plena vista debido a que el agente “no tenía dere-cho a estar en el lugar desde donde alegadamente observó la pistola ... ”. (Enfasis suprimido.) Pueblo v. Serrano, Serra, ante, págs. 189 — 190.
En el presente caso, nos encontramos con hechos total-mente similares. Por cierto, en la vista de supresión de evidencia los dos agentes que intervinieron con el vehículo reconocieron que al llegar al lugar donde se encontraba la minivan blanca no había indicios de la comisión de ningún delito, ni la dama gritaba pidiendo auxilio ni mostraba sig-nos de violencia. En otras palabras, no hubo corroboración de actividad delictiva o sospechosa. Además de no tener motivos fundados razonables para intervenir debido a la falta de corroboración de actividad sospechosa, nos llaman la atención otros hechos del caso que le restan credibilidad a las declaraciones de los agentes.
Cabe destacar: el agente retén no apuntó en ninguna bitácora la hora ni la información que recibió del confi-dente; los agentes Cantres y Domínguez no escribieron ningún apunte o notas sobre el incidente ocurrido; el *609 agente Cantres fue el único que observó las armas de fuego, a pesar de que Domínguez también declaró haber estado parado frente al pasajero y observar el vehículo por dentro; el agente Domínguez declaró haber observado de-tenidamente el vehículo por dentro y mencionó que no ha-bía nada delictivo adentro, aunque luego supuestamente apareció entre las sillas un bulto negro abierto y con balas; en las declaraciones juradas los agentes omitieron infor-mación importante que luego expresaron en la vista; el agente Cantres alega que el retén le mencionó que había un hombre armado dentro del vehículo, mientras que Do-mínguez no lo menciona; la bolsa negra con municiones estaba totalmente abierta y expuesta a simple vista.
Los jueces no debemos, después de todo, ser tan inocen-tes como para creer declaraciones que nadie más creería. Pueblo v. Luciano Arroyo, 83 D.P.R. 573, 582 (1961). Ante las incongruencias tácticas que presenta este caso, así como la falta de corroboración de actividad sospechosa ante una confidencia anónima y la ausencia de motivos fundados para intervenir con los ocupantes del vehículo, resulta forzoso concluir que la evidencia ocupada se obtuvo como consecuencia directa de la acción ilegal original de intervenir con los ocupantes del vehículo; esto es, la ocupa-ción que se realizó es “ ‘fruto del árbol ponzoñoso’ ”. Pueblo v. Serrano, Serra, ante, pág. 189.
Aparte de todo lo anterior, debemos recordar que al en-frentarnos a la tarea de revisar cuestiones relativas a con-vicciones criminales, siempre nos hemos regido por la norma a los efectos de que la apreciación de la prueba co-rresponde, en primera instancia, al foro sentenciador, por lo que los tribunales apelativos sólo intervendremos con dicha apreciación cuando se demuestre la existencia de pa-sión, prejuicio, parcialidad o error manifiesto. Pueblo v. Irizarry, 156 D.P.R. 780, 788-789 (2002); Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49 (1991). En el caso ante nos, no vemos que el Tribunal de Primera Instancia haya proce- *610 dido con error, prejuicio o arbitrariedad. El foro de instan-cia pudo observar directamente a los agentes que declara-ron y convencerse de la falta de credibilidad en sus testimonios, así como de las contradicciones entre ellos. Es nuestra función, pues, darle deferencia a dicho foro.
En consecuencia, expediría el recurso de certiorari pre-sentado y revocaría la determinación del Tribunal de Ape-laciones que dejó sin efecto la supresión de evidencia dic-tada por el foro de instancia.

 Sentencia de 31 de octubre de 2011 y notificada el 3 de noviembre de 2011.

 Véase Transcripción Vista sobre Supresión de Evidencia, pág. 14, Apéndice, pág. 113.

 Mencionó haber recibido la misma información que declaró Cabrera en la Vista sobre Supresión de Evidencia.

 Véase Transcripción Vista sobre Supresión de Evidencia, págs. 45-46, Apén-dice, págs. 144-145.

 En el contrainterrogatorio, el agente Cantres reconoció que en la declaración jurada que brindó dos días después de los hechos no mencionó nada con relación a la dama. íd., págs. 49-50, Apéndice, págs. 148-149.

 íd., pág. 36, Apéndice, pág. 135.

 íd., pág. 72, Apéndice, pág. 171.

 íd., pág. 120, Apéndice, pág. 219.

 Cabe señalar que esa contradicción entre la declaración de Domínguez y la de Cantres, en el sentido de que según este último se les informó sobre un hombre con un arma de fuego dentro de la minivan mientras que Domínguez no mencionó eso, fue un factor que el Tribunal de Primera Instancia consideró para declarar “con lugar” la supresión de la evidencia. Véase Minuta Resolución, Apéndice, pág. 37.

 Es meritorio hacer énfasis en la contradicción entre esa declaración de no haber visto nada delictivo dentro del automóvil y la aparición del bulto negro supues-tamente abierto entremedio de las sillas y expuesto a fácil observación.

 Véase Transcripción Vista sobre Supresión de Evidencia, pág. 102, Apén-dice, pág. 201.