Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>        Recurrido<br><br><br><br>                    v.<br><br><br><br>Israel García Ojeda y<br>Emmanuel Morales Acevedo<br><br>        Peticionarios | Certiorari<br><br><br><br>2011 TSPR 182<br><br><br><br>183 DPR ____ |

Número del Caso:   CC-2011-976


Fecha: 5 de diciembre de 2011


Tribunal de Apelaciones:

                Región Judicial de Bayamón, Aibonito y Humacao

Juez Ponente:       Hon. Bruno E. Cortes Trigo


Abogada de la Parte Peticionaria:

                Lcda. Ana Esther Andrade Rivera


Oficina de la Procuradora General:

                Lcda. Lisa M. Durán Ortiz
                Procuradora General Auxiliar


Materia: Ley de Armas Art. 5.04 y 6.01


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

       v.

Israel García Ojeda, Emmanuel
Morales Acevedo

     Peticionarios

         CC-2011-976

RESOLUCIÓN

En San Juan, Puerto Rico, a 5 de diciembre de 2011.

A la solicitud de *certiorari* y la moción de paralización en auxilio de nuestra jurisdicción, no ha lugar.

Como señaló el Tribunal de Apelaciones en las páginas 13-15 de su sentencia:

### III

Los recurridos argumentan, esencialmente, que, como los agentes no corroboraron de forma alguna la alegada actividad delictiva informada en la confidencia, su intervención con los recurridos fue ilegal y toda la prueba ocupada como producto de tal intervención tiene que ser suprimida. No les asiste la razón.

La policía de Puerto Rico "tiene la obligación de investigar toda llamada telefónica recibida o información brindada por [la] ciudadanía referente a posible actividad delictiva". Pueblo v. Ortiz Martínez, 116 D.P.R. 139, 144

(1985). En este caso, los agentes, en cumplimiento de ese deber, así procedieron. Al llegar al lugar que se les informó por el radio, corroboraron la información recibida de que había una guagua Caraban blanca estacionada en la Avenida Toa Alta Heights. Asimismo, al estacionarse detrás de dicha guagua, bajarse de su vehículo y acercarse a la guagua, verificaron que en el interior de ésta había dos hombres y una mujer, como el retén les habían comunicado por radio. Aun cuando en ese momento los agentes no habían corroborado la alegada actividad delictiva informada en la confidencia, ciertamente estas peculiares circunstancias requerían que los oficiales del orden público continuaran con la gestión investigativa legítima que habían iniciado, especialmente cuando lo que hicieron fue acercarse al conductor de la guagua para verificar que todo estuviera bien y que no estaba ocurriendo algún acto delictivo. Pueblo v. Corraliza Collazo, 121 D.P.R. 244, 247-248 (1988); Pueblo v. Ortiz Martínez, 116 D.P.R. a la pág. 144.

Así la intervención de los agentes con los recurridos ocurrió cuando tuvieron motivos fundados para arrestarlos, una vez se percataron de que uno de ellos recurridos tenía un arma de fuego. En estas circunstancias, los agentes tenían que arrestar a los recurridos y ocupar el arma de fuego hasta que éstos demostraran que tenían autorización para poseerla. Pueblo v. Corraliza Collazo, 121 D.P.R. a las págs. 248-249; Pueblo v. Del Río, 113 D.P.R. 684, 690 (1982). Por lo tanto, la intervención fue válida, los agentes tenían motivos fundados para arrestar a los recurridos e incautar las armas de fuego y municiones y el TPI incidió al ordenar la supresión de la prueba.

Contrario a lo que aducen los recurridos, aquí no aplica lo resuelto en Pueblo v. Serrano, Serra, 148 D.P.R. 173 (1999). En ese caso, el TSPR estableció que, cuando se recibe una confidencia de posible actividad sospechosa o delictiva, se requiere corroborar dicha actividad para poder detener o privar de su libertad a una persona. En el caso de epígrafe, los agentes no detuvieron a los recurridos, sino hasta después de que tuvieron motivos fundados para entender que estaban delinquiendo y su intervención con éstos, hasta el momento del arresto, fue en cumplimiento de su obligación de investigar la posible actividad delictiva. Por ello, no aplica la decisión del TSPR antes citada.

Además, aunque ciertamente hubo algunas inconsistencias en los testimonios de los agentes, los mismos no resultan increíbles, ni carentes de detalles que conlleven que se descarten por irreales, ni carentes de detalles que conlleven que se descarten por irreales. Sus declaraciones coincidieron en lo esencial en cuanto a que en la confidencia anónima se indicó que había una guagua Caravan blanca estacionada en la Avenida Toa Alta Heights en la que estaban dos hombres y una mujer gritando o pidiendo auxilio, y ello, excepto lo último, fue corroborado por los Agentes Cantres y Domínguez. _Pueblo v. Camilo Meléndez_, 148 D.P.R. a las págs. 559-560. Lo anterior, motivó a los agentes a cumplir su deber de investigar las circunstancias, y los llevó a ver a plena vista el arma que tenía uno de los recurridos. Por lo tanto, procede revocar la determinación de suprimir la prueba incautada a los recurridos por estos hechos.

Aclaramos que lo anterior, de forma alguna prejuzga la evaluación de la prueba que realizará el juzgador en el juicio, cuando el MP tiene que probar la culpabilidad de los recurridos más allá de duda razonable.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal. La Jueza Asociada señora Fiol Matta paralizaría y expediría. La Juez Asociada señora Rodríguez Rodríguez emitió voto particular disidente al que se une el Juez Presidente señor Hernández Denton.


                        Aida I. Oquendo Graulau
                    Secretaria del Tribunal Supremo

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Israel García Ojeda y<br>Emmanuel Morales Acevedo<br><br>Peticionario | CC-2011-0976 |

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez al que se une el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 5 de diciembre de 2011

Disiento del curso seguido por una mayoría de este Tribunal por entender que los derechos constitucionales de dos individuos se verían altamente afectados. No debemos olvidar que esos derechos que una mayoría de esta Curia decide no reconocer, según el proceder en este caso, fundamentan su existencia en la aplicación por igual a todo ciudadano.

**I.**

El 28 de noviembre de 2011 Israel García Ojeda presentó ante este Tribunal un recurso de *certiorari* junto con una moción urgente en auxilio de jurisdicción. En esta última solicita que paralicemos un pre-trial señalado para el 5 de diciembre de 2011 en el Tribunal de Primera Instancia, Sala Superior de Bayamón, en lo que atendemos el recurso de *certiorari*. En dicho recurso el peticionario solicita que

revoquemos una determinación del Tribunal de Apelaciones[1] que revocó la resolución dictada por el Tribunal de Primera Instancia (TPI), en donde dicho foro declaró con lugar una solicitud de supresión de evidencia.

Por hechos ocurridos alegadamente el 20 de diciembre de 2010, el Ministerio Público presentó varias denuncias contra el peticionario y Emmanuel Morales Acevedo por infracciones a la Ley de Armas de Puerto Rico, Ley Núm. 404 de 11 de septiembre de 2000, 25 LPRA §§ 455-460k. Tras la determinación de causa probable en vista preliminar y la presentación de las respectivas acusaciones, los acusados presentaron sendas mociones para solicitar la supresión de la evidencia incautada. En éstas alegaron que la evidencia obtenida fue producto de una intervención basada en una confidencia anónima que no fue corroborada y que el registro fue ilegal por no haber motivos fundados para la detención sin orden judicial. En la vista de supresión de evidencia declararon los agentes José J. Cabrera García, Julio Cantres Rivera y Luis Domínguez. Veamos cada declaración por separado.

En síntesis, el agente **Cabrera** declaró que el 20 de diciembre de 2010 él laboraba como retén del radio operador del cuartel de Toa Alta cuando alrededor de la 1:05pm recibió una llamada anónima con voz de hombre y que le indicó que en la Avenida Toa Alta Heights había un vehículo tipo minivan parecido a una Caravan, en cuyo interior se escuchaba a una dama gritar y pedir auxilio, así como dos individuos de los

_____

[1] Sentencia del 31 de octubre de 2011 y notificada el 3 de noviembre de 2011.

que uno portaba un arma de fuego. [2] Cabrera cursó la información a través del radio operador y luego los agentes Cantres y Domínguez indicaron que iban a intervenir con un vehículo similar al de las descripciones. En el contrainterrogatorio el agente Cabrera indicó que el informante nunca le dio el número de tablilla del vehículo ni la descripción física de las personas dentro del vehículo. Asimismo, declaró que el informante nunca se identificó ni pudo corroborar si la persona había dado información anteriormente. El agente tampoco anotó la llamada en la bitácora de recibir llamadas anónimas porque en ese cuartel no se utiliza ninguna bitácora para esos fines, a pesar de que en otros cuarteles sí. Cuando los agentes Cantres y Domínguez se personaron al lugar y se comunicaron con Cabrera, nunca le dijeron si en efecto había una dama pidiendo auxilio. Tampoco le pidieron refuerzos.

Por su parte, el agente **Cantres** declaró que mientras patrullaba con Domínguez recibió a través del radio operador la información ofrecida por el confidente. [3] Indicó que nunca le dieron el número de tablilla, la descripción física de las personas dentro del vehículo ni el número de puertas del vehículo. [4] Al dar con un vehículo minivan blanco en el lugar indicado, el agente Cantres bajó de la patrulla y percibió a dos hombres en la parte delantera del vehículo y a una dama en el asiento de atrás. Declaró que antes de intervenir en la

---

[2] *Véase* Transcripción Vista sobre Supresión de Evidencia, en la pág. 14, Apéndice en la pág. 113.
[3] Mencionó haber recibido la misma información que declaró Cabrera en la vista de supresión de evidencia.
[4] *Véase* Transcripción Vista sobre Supresión de Evidencia, en las págs. 45-46, Apéndice en las págs. 144-45.

escena el vehículo estaba apagado y que **no se había cometido ningún tipo de violación de ley**, incluso la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 de 7 de enero de 2000, 9 LPRA §§ 5001-5725. Asimismo, declaró que la dama no gritaba ni pedía ayuda, nadie forcejeaba con ella, sus vestiduras no estaban rotas ni había muestra de violencia alguna hacia ella, aunque ella sí se veía exhausta, como desesperada, nerviosa y sudorosa.[5] Al acercarse por el lado del conductor se percató que debajo de la pierna del pasajero "se notaba como las cachas de un arma de fuego".[6] Al percibir eso, se lo indica a su compañero Domínguez y éste procede a ocupar el arma y arrestar al pasajero (Israel García). Cantres ordena al conductor (Emmanuel Morales) a bajarse del vehículo y cuando éste lo hace, Cantres le ocupa un arma de fuego que estaba debajo del muslo del conductor.

Luego de arrestar a los acusados, se arresta también a la dama, quien resultó ser hermana del aquí peticionario (Israel García). Sin embargo, nunca se le preguntó a ella si era la persona que había estado gritando.[7] Posterior al arresto de las tres personas y en el mismo lugar de los hechos (por lo tanto, previo a transportar el vehículo al cuartel para realizar el inventario adecuado), Cantres observó un bulto negro entre las sillas delanteras, que estaba abierto con una bolsa "ziplock" y balas adentro. Procedió a incautarlo también.

---

[5] En el contrainterrogatorio el agente Cantres reconoció que en la declaración jurada que brindó dos días después de los hechos no mencionó nada con relación a la dama. *Id.* en las págs. 49-50, Apéndice en las págs. 148-49.
[6] *Id.* en la pág. 36, Apéndice en la pág. 135.
[7] *Id.* en la pág. 72, Apéndice en la pág. 171.

El agente **Domínguez** hizo declaraciones similares a las de Cantres. Sin embargo, contrario a lo declarado por Cantres y Cabrera y a preguntas del juez que presidió la vista, Domínguez declaró que la información recibida por el retén fue sólo sobre la minivan blanca, el lugar donde se encontraba y la mujer que gritaba.[8] No mencionó nada sobre el supuesto hombre con un arma de fuego dentro de la minivan. A preguntas del juez sobre si eso fue lo único que recibieron por parte del retén, el agente respondió en la afirmativa.[9] Domínguez igual declaró que al llegar a la escena no había signos de violencia en la dama, no se observaba nada sospechoso en relación con la información transmitida por radio, **no había notado nada delictivo dentro del automóvil**[10] ni vio el arma de fuego debajo del muslo del conductor ni las cachas de un arma debajo de la pierna del pasajero, según la versión de Cantres. No fue hasta que Cantres le menciona lo de las cachas del arma, que Domínguez le ordena al pasajero bajarse del vehículo. En cuanto al supuesto bulto negro que estaba abierto dentro del vehículo, Domínguez declaró que lo incautaron después que los tres ocupantes del carro ya estaban arrestados. Incluso, el agente testificó que de la

---

[8] *Véase id.*, en la pág. 120, Apéndice en la pág. 219.

[9] Cabe señalar que esa contradicción entre la declaración de Domínguez y la de Cantres, en el sentido de que según este último se les informó sobre un hombre con un arma de fuego dentro de la minivan mientras que Domínguez no mencionó eso, fue un factor que el Tribunal de Primera Instancia tomó en consideración para declarar con lugar la supresión de la evidencia. *Véase* Minuta Resolución, Apéndice en la pág. 37.

[10] **Es meritorio hacer énfasis en la contradicción entre esa declaración de no haber visto nada delictivo dentro del automóvil y la aparición del bulto negro supuestamente abierto entremedio de las sillas y expuesto a fácil observación.**

intervención que Cantres y él realizaron **ninguno tomó notas ni apuntes sobre lo sucedido.**[11]

El Art. II, Sec. 10, de la Constitución de Puerto Rico garantiza el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. Igual dispone que por autoridad judicial sólo se expedirán órdenes autorizando registros, allanamientos o arrestos cuando exista causa probable apoyada en juramento o afirmación. Dicha sección finaliza plasmando que la evidencia obtenida en violación de lo anterior es inadmisible en los tribunales. Esta norma general de la constitución tiene como excepción lo establecido en la Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, R. 11. En cuanto a la frase "motivos fundados" que menciona la Regla 11 hemos expresado consistentemente que significa la posesión de aquella información o conocimiento que lleven a una persona ordinaria y prudente a creer que la persona a ser detenida ha cometido un delito. *Pueblo v. Serrano, Serra*, 148 DPR 173, 182-83 (1999).

Respecto a arrestos efectuados por agentes del orden público como consecuencia de éstos haber recibido una confidencia sobre supuesta actividad delictiva, en *Pueblo v. Díaz Díaz*, 106 DPR 348 (1977), este Tribunal adoptó una norma de cuatro criterios para evaluar las circunstancias en que una confidencia puede servir de base para la existencia de causa probable. Los criterios son: (1) que el confidente previamente ha suministrado información correcta; (2) que la

---

[11] *Véase* Transcripción Vista sobre Supresión de Evidencia, en la pág. 102, Apéndice en la pág. 201.

confidencia conduce hacia el criminal en términos de lugar y tiempo; (3) que la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes; y (4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse. Posteriormente, en *Pueblo v. Muñoz, Colón y Ocasio*, 131 DPR 964 (1992), reafirmado en *Pueblo v. Ortiz Alvarado*, 135 DPR 41 (1994), expresamos que siempre hemos exigido que la confidencia haya sido corroborada por el agente, ya sea mediante observación personal o por información de otras fuentes. Más aún, en *Pueblo v. Ortiz Alvarado* expresamos que al momento de determinar si existe causa probable hay que hacerlo a base de criterios de razonabilidad, puesto que **tener meras sospechas no basta.**

Finalmente, es importante señalar que el hecho de que en un registro o allanamiento se encuentre evidencia delictiva no puede ser utilizado como fundamento para convalidar la ilegalidad del mismo. *Pueblo v. Serrano, Serra*, 148 DPR en la pág. 185. Lo que debemos evaluar es la conducta previa al registro para determinar si efectivamente había causa probable o motivo fundado para llevarlo a cabo. *Id.*

Es preciso analizar los hechos de este caso a la luz del derecho vigente para determinar si la intervención y posterior incautación de la evidencia fue legal o no. De entrada, concurrimos con la interpretación del Tribunal de Instancia a los efectos de que las declaraciones de los agentes en la vista de supresión de evidencia denotan contradicciones en cuanto a la información que el agente Cabrera les brindó por radio. La presente controversia es

similar al caso *Pueblo v. Serrano, Serra*, 148 DPR 173 (1999) (Rebollo López, Op. Mayoritaria). En aquel caso unos agentes recibieron confidencias de un vehículo cuyos ocupantes tenían armas de fuego. El confidente no informó el número de tablilla del vehículo ni descripción física de los ocupantes, sólo el color del vehículo y el lugar donde se encontraba. Los agentes de la Policía vieron un vehículo similar en el lugar indicado y procedieron a intervenir con los ocupantes. Allí, igual incautaron unas armas de fuego ilegales. Este Tribunal examinó los hechos y determinó que la intervención fue contraria a derecho puesto que los agentes no tenían motivos fundados razonables para intervenir con los ocupantes del vehículo, ya que no corroboraron la confidencia recibida. Sostuvo el Tribunal en dicho caso:

> Una confidencia sobre posible actividad delictiva, **por sí sola**, no es suficiente para privar de su libertad a uno de nuestros conciudadanos; **tiene que haber corroboración de actividad sospechosa o delictiva**. En otras palabras, **la confidencia recibida no se corrobora con cualquier información que tienda a establecer que, alguna parte del contenido de la misma, es veraz. Tiene que haber, repetimos, corroboración de actividad sospechosa.**

*Pueblo v. Serrano, Serra*, 148 DPR en la pág. 187 (énfasis suplido y en el original). Tras determinar que no había motivos fundados para intervenir con el vehículo, este Tribunal concluyó que tampoco se satisfacía la aplicación de la doctrina de evidencia ilegal a plena vista, debido a que el agente "no tenía derecho a estar en el lugar desde donde alegadamente observó la pistola". *Id.* en las págs. 189-90.

En el presente caso, nos encontramos con hechos totalmente similares. Por cierto, en la vista de supresión de evidencia los dos agentes que intervinieron con el vehículo

reconocieron que al llegar al lugar donde se encontraba la minivan blanca no había indicios de la comisión de ningún delito ni la dama gritaba pidiendo auxilio ni mostraba signos de violencia. En otras palabras, **no hubo corroboración de actividad delictiva o sospechosa.** Además de no tener motivos fundados razonables para intervenir debido a la falta de corroboración de actividad sospechosa, nos llama la atención otros hechos del caso que le restan credibilidad a las declaraciones de los agentes.

Cabe destacar: el agente retén no apuntó en ninguna bitácora la hora ni la información recibida por el confidente; los agentes Cantres y Domínguez no escribieron ningún apunte o notas sobre el incidente ocurrido; el agente Cantres fue el único que observó las armas de fuego, a pesar de que Domínguez también declaró haber estado parado frente al pasajero y haber observado el vehículo por dentro; el agente Domínguez declaró haber observado detenidamente el vehículo por dentro y mencionó no haber nada delictivo adentro, aunque luego supuestamente apareció un bulto negro "abierto" y con balas entre las sillas; en las declaraciones juradas los agentes omitieron información importante que luego se expresó en la vista; el agente Cantres alega que el retén le mencionó de un hombre armado dentro del vehículo, mientras que Domínguez no hace mención a ello; la bolsa negra con municiones estaba totalmente abierta y expuesta a simple vista.

Los jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería. *Pueblo v. Luciano Arroyo*, 83 DPR 573, 582 (1961).

Ante las incongruencias fácticas que presenta este caso, así como la falta de corroboración de actividad sospechosa ante una confidencia anónima y la ausencia de motivos fundados para intervenir con los ocupantes del vehículo, resulta forzoso concluir que la evidencia ocupada se obtuvo en consecuencia directa de la acción ilegal original de intervenir con los ocupantes del vehículo; esto es, la ocupación realizada es "fruto del árbol ponzoñoso". *Pueblo v. Serrano, Serra*, 148 DPR en la pág. 189.

Aparte de todo lo anterior, debemos recordar que al enfrentarnos a la tarea de revisar cuestiones relativas a convicciones criminales, siempre nos hemos regido por la norma a los efectos de que la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador por lo que los tribunales apelativos sólo intervendremos con dicha apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Irizarry*, 156 DPR 780, 788-89 (2002); *Pueblo v. Maisonave Rodríguez*, 129 DPR 49 (1991). En el caso ante nos, no vemos que el Tribunal de Primera Instancia haya procedido con error, prejuicio o arbitrariedad. El foro de instancia pudo observar directamente a los agentes que declararon y convencerse de la falta de credibilidad en sus testimonios, así como de las contradicciones entre ellos. Es nuestra función, pues, darle deferencia a dicho foro.

En consecuencia, expediría el recurso de *certiorari* presentado y revocaría la determinación del Tribunal de

Apelaciones que dejó sin efecto la supresión de evidencia dictada por el foro de instancia.



                              Anabelle Rodríguez Rodríguez
                                   Juez Asociada