Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>Luis Torres Cardona<br><br>Peticionario | TA2026CE00301 | ***CERTIORARI***<br>procedente del<br>Tribunal de Primera<br>Instancia, Sala<br>Superior de Aguadilla<br><br>Crim. Núm.:<br>A LE2025M0023<br>A OP2025M0011<br>A SC2025g0259<br><br>Sobre: Ley 22 /<br>A246CP / A401SC |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de marzo de 2026.

Comparece el señor Luis Torres Cardona (Sr. Torres Cardona o peticionario), quien nos solicita la revocación de la Minuta Resolución-Orden emitida el 4 de febrero de 2026[1], por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI o foro primario). Mediante el referido dictamen, el foro primario declaró No Ha Lugar la moción de supresión de prueba promovida por el peticionario, al amparo de la Regla 234 de Procedimiento Criminal, *infra*.

Examinada la solicitud de autos, la totalidad del expediente y el derecho aplicable, expedimos el *Certiorari* peticionado, y confirmamos el dictamen recurrido, por los fundamentos que expondremos a continuación.

**I.**

Por hechos ocurridos el 27 de junio de 2025, el Ministerio Público radicó una serie de denuncias en contra del Sr. Torres

---

[1] Notificada el 12 de febrero de 2026.

Cardona de conformidad con el Art. 401 de la Ley de Sustancias Controladas (1971), 24 LPRA sec. 2401, el Art. 246 del Código Penal (2012), 33 LPRA sec. 5336, y el Art. 3.23 de la Ley de Vehículos y Tránsito (2000), 9 LPRA sec. 5073.[2]

Acontecidos los trámites de rigor, el 16 d octubre de 2025, el foro primario celebró la vista preliminar al amparo de la Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II R. 23. Tras examinar la prueba, determinó causa probable para celebrar juicio por la violación al Art. 401 de la Ley de Sustancias Controladas, según lo establece la acusación que obra en el expediente.[3]

En vista de lo anterior, el 17 de noviembre de 2025, el peticionario interpuso una Moción de Supresión de Evidencia a tenor con la Regla 234 de Procedimiento Criminal, *infra*. En esencia, arguyó que la evidencia ocupada fue obtenida ilegalmente sin una orden de registro. Señaló, además que, los testimonios de los agentes de orden público son estereotipados y sustancialmente falsos. Levantados tales argumentos, solicitó la supresión de sus testimonios, así como del material ocupado en el interior de su vehículo de motor.

Por su parte, el Ministerio Público radicó el 8 de enero de 2026 su Oposición a la Moción de Supresión de Evidencia. En síntesis, sostuvo que la detención del peticionario ocurrió mientras el agente Vázquez Nieves intervino con el conductor de un vehículo de motor (marca JEEP) porque este no tenía su cinturón de seguridad. No obstante, aseveró que, cuando se le indicó al Sr. Torres Cardona que detuviera su automóvil, este retrocedió y se dirigió hacia un área boscosa. Por tales hechos, la fiscalía expuso que, el peticionario fue seguido por las patrullas hasta llegar a la zona boscosa en donde este impactó una verja y un árbol. Adujo

---

[2] Apéndice del Recurso de *Certiorari,* Anejo 4, a las págs. 1-4.
[3] Apéndice del Recurso de *Certiorari,* Anejo 6, a la pág. 1.

que una vez allí, el agente González Barreto (1) lo detuvo, (2) le indicó las advertencias correspondientes y (3) le comunicó que lo arrestaba por obstrucción la justicia. En cuanto al registro, el Ministerio Público informó que, al momento de los hechos, el agente Barreto observó inadvertidamente en la parte delantera del vehículo unas bolsas trasparentes con polvo blanco en su interior. En vista de ello, arguyó que los testimonios de ambos agentes brindan información precisa, y por ende, no procede la concesión de la supresión de evidencia.

Así las cosas, el foro primario celebró una vista el 4 de febrero de 2026 a la cual comparecieron el Ministerio Público y el representante legal del peticionario. Escuchados los testimonios de los agentes y la argumentación de la defensa, emitió una Minuta Resolución-Orden (Resolución)[4], en la cual declaró No Ha Lugar la Moción de Supresión de Evidencia.

Inconforme, el 11 de marzo de 2026, el Sr. Torres Cardona recurrió ante este Tribunal de Apelaciones mediante un recurso de *Certiorari*, en el cual presentó el siguiente señalamiento de error:

> *Erró crasamente el Tribunal de Primera Instancia al declarar no ha lugar la solicitud de supresión de evidencia y otorgar entera credibilidad al testimonio de los agentes, los cuales son claramente estereotipados, a los fines de justificar lo que a todas luces fue una intervención y arresto ilegal.*

En igual fecha, el peticionario radicó una moción de auxilio de jurisdicción, en la cual solicitó nuestra inmediata intervención a los fines de evitar que la controversia planteada se tornase académica. A su vez, nos informó que el juicio está señalado para el 18 de marzo de 2026. Asimismo, sometió una Moción Presentando Físicamente Regrabación relativa a la vista de supresión de evidencia. En consideración a sus señalamientos, emitimos una Resolución, en la cual concedimos a la parte

---

[4] Notificada el 12 de febrero de 2026.

recurrida un término a vencer el 16 de marzo de 2026 para exponer su posición.

De conformidad con nuestro decreto, el Pueblo de Puerto Rico, por conducto de la Oficina General del Pueblo de Puerto Rico, presentó el Escrito en Cumplimiento de Orden. En síntesis, argumentó que los testimonios de los agentes son creíbles, pues estos demostraron, mediante relatos detallados, que sí contaban con los motivos fundados para detener al peticionario y efectuar el registro de su vehículo de motor. Asimismo, adujo que en el presente caso aplica la doctrina de evidencia obtenida a simple vista, según reconocida en *Pueblo v. Dolce, infra.* A la luz de este precedente, indicó que el peticionario no albergaba una expectativa de intimidad en cuanto a la evidencia material identificada en su automóvil. Por lo anterior, nos solicitó que denegáramos la expedición del auto de *Certiorari*, o en su alternativa, expidiéramos y confirmáramos el dictamen recurrido.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

**II.**

**A.**

Como es sabido, el auto *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021). *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Art. 670 del Código de Enjuiciamiento Civil de 1933 de la Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva de este vehículo procesal se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et*

*al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Así que, a diferencia del recurso de apelación, el tribunal revisor puede expedir el auto de *Certiorari* de manera discrecional. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Pueblo v. Díaz De León*, 176 DPR 913, 917-918 (2009). Ahora bien, en aras de orientar la discreción judicial, la Regla 40 del Tribunal de Apelaciones, del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), delimita las circunstancias para considerar la expedición del *Certiorari*:

> A. *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.*
>
> B. *Si la situación de hechos planteada es la más indicada para analizar el problema.*
>
> C. *Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> D. *Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> E. *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> F. *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> G. *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Tales criterios permiten que, los tribunales apelativos revisores ejerzan prudentemente su discreción al decidir si atiende en los méritos el recurso. *Pueblo v. Rivera Montalvo, supra,* a la pág. 373. A su vez, procuran que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* a la pág. 176. Al examinar si procede o no la

expedición de este recurso, nos compete ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 849 (2023). Por consiguiente, no debemos intervenir en las determinaciones de hechos del foro primario, salvo se pruebe prejuicio, parcialidad o craso abuso de discreción o error manifiesto. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

**B.**

La Cuarta Enmienda de la Constitución de los Estados Unidos y la Carta de Derechos de la Constitución de Puerto Rico prohíben los registros, las incautaciones y los allanamientos irrazonables. Emda. IV, Const. EEUU, LPRA, Tomo I; Art. II, Sec. 10, Const. PR, LPRA, Tomo 1. En virtud de esta protección, los tribunales deben expedir una orden para registrar, allanar o arrestar, siempre y cuando exista una causa probable respaldada en un juramento o una afirmación que describa el lugar a registrarse y las personas a detenerse o las cosas a ocuparse. Íd. Así, pues, la determinación de causa probable por orden judicial garantiza la dignidad y la intimidad de las personas, pues interpone la figura imparcial del juez entre los funcionarios públicos y la ciudadanía. *Pueblo v. Calderón Díaz*, 156 DPR 549, 556 (2002); *Pueblo v. Colón Bernier*, 148 DPR 135, 141 (1999).

Por tanto, todo registro, allanamiento o incautación, penal o administrativo, que se realice sin orden judicial es irrazonable, salvo que el Estado demuestre su validez. *Doble Seis Sport v. Depto. Hacienda*, 190 DPR 763, 776 (2014); *E.L.A. v. Coca Cola Bott. Co.*, 115 DPR 197, 207 (1984). Al amparo de esta protección, nuestro ordenamiento jurídico requiere que, como norma general, se obtenga una orden juridicial para efectuar un arresto, registro o

allanamiento. *Pueblo v. Apolinar Rondón*, 2025 TSPR 113, 216 DPR ___ (2025); *Pueblo v. Báez López*, 189 DPR 918, 944-945 (2013). Ahora bien, esta normativa admite una serie de excepciones. Veamos.

Respecto a los arrestos sin orden judicial, la Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, R. 11, dispone que un funcionario de orden público podrá realizarlos en los siguientes contextos: (1) cuando tuviere motivos fundados para creer que la persona a ser arrestada ha cometido un delito en su presencia[5]; (2) cuando la persona arrestada hubiese cometido un delito grave aunque no en su presencia; o (3) cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave, independientemente de que dicho delito se hubiere cometido o no. Sobre los motivos fundados, el Tribunal Supremo de Puerto Rico ha adoptado la siguiente norma:

> *[Los "motivos fundados" constituyen el mínimo de información que razonablemente podría convencer a un juez de que existe "causa probable" para expedir una orden de arresto. Por ello, el agente que realice un arresto, sin la orden correspondiente, debe observar o estar informado de "hechos concretos que razonablemente apunten a la comisión de un delito". Pueblo v. Calderón Díaz, supra,* a las págs. 558-559*; Pueblo v. Serrano, Serra,* 148 DPR 173, 184-185 (1999).[6]

En esa dirección, al evaluar la existencia de los motivos fundados, "[l]a conducta del funcionario público se juzga pues en

---

[5] Según preceptúa la referida regla, en este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario, el funcionario deberá solicitar que se expida una orden de arresto. 34 LPRA Ap. II, R. 11.

[6] En nuestro ordenamiento, los motivos fundados son transferibles de un agente a otro, pues, "el conocimiento de cada agente cuando trabajan cerca y se mantienen informados es atribuible a los demás. Basta con que el agente de la Policía que inició la cadena de comunicaciones tenga información de primera mano". *Pueblo v. Luzón*, 113 DPR 315, 324-325 (1984). En *Pueblo v. Martínez Torres*, 120 DPR 496, 505 (1988), nuestro Tribunal Supremo reiteró los siguientes parámetros en cuanto a los motivos fundados transferidos:

> *[S]e puede establecer la existencia de causa para justificar un arresto sin orden, basado en información policiaca colectiva al momento del mismo, siendo innecesario que el oficial que lleva a cabo el arresto lo haga basándose únicamente en su conocimiento personal de las circunstancias. Basta con que el agente de la Policía que inició la cadena de comunicaciones tenga información de primera mano.*

orden al criterio de la persona prudente y razonable, por lo que es necesario considerar las circunstancias específicas del arresto para determinar su validez". *Pueblo v. Alcalá,* 109 DPR 326, 332 (1980). Así que, los motivos fundados existen si se desprende de la totalidad de las circunstancias "que una persona ordinaria y prudente poseería aquella información y conocimiento que la llevarían a creer que la persona arrestada ha cometido o va a cometer el delito en cuestión". *Pueblo v. Colón Bernier, supra,* a la pág. 142; *Pueblo v. Ortiz Alvarado,* 135 DPR 41, 47 (1994).

Por otro lado, aunque relacionado con lo discutido, es menester explicar que, no siempre resultan ilegales aquellos registros efectuados sin orden judicial, pues "lo que la Constitución intenta evitar son los registros irrazonables". *Pueblo v. Rivera Colón,* 28 DPR 672, 682 (1991) (citando al Diario de Sesiones de la Convención Constituyente 1566 (1961)). Ahora bien, "[e]l alcance de la protección constitucional dependerá de si la persona afectada alberga subjetivamente una expectativa legítima de intimidad en un lugar y es razonable que abrigue tal expectativa". *Pueblo v. Soto Soto,* 168 DPR 46, 55 (2006).

Así pues, nuestro Alto Foro ha validado el registro sin que medie una orden judicial en tales instancias: (1) un registro incidental a un arresto legal, (2) un registro consentido voluntariamente de forma expresa o implícita, (3) un registro en situación de emergencia, (4) evidencia ocupada en el transcurso de una persecución, (5) evidencia a plena vista, (6) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo por el olfato, (7) evidencia arrojada o abandonada, (8) un registro o allanamiento de una estructura abandonada, (9) evidencia obtenida durante un registro administrativo, (10) registro tipo inventario, o (11) evidencia obtenida en un lugar público. *Pueblo v. Báez López, supra,* a las págs. 930-931; *Pueblo v. Cruz*

*Torres*, 137 DPR 42 (1994). Bajo tales circunstancias, el Estado superará el examen constitucional si demuestra que, el agente de orden público se encontraba legítimamente el lugar de los hechos donde se pudo obtener la evidencia. Véase, *Pueblo v. Báez López*, *supra*, a la pág. 947. Veamos.

En cuanto a la evidencia obtenida a simple vista, conviene repasar el precedente *Pueblo v. Dolce Cabán*, 105 DPR 422 (1988). En este caso, durante una detención por infracción vehicular, el agente inadvertidamente percibió en el interior del vehículo de motor unos paquetes parecidos a picadura o semilla de marihuana. *Íd.*, a la pág. 435. Examinados tales hechos, el Tribunal Supremo de Puerto Rico determinó que no procedía la supresión de la evidencia ocupada sin orden judicial, a la luz de las siguientes consideraciones: (1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) el agente que observe la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba; (3) debe descubrirse el objeto inadvertidamente; (4) la naturaleza delictiva del objeto debe surgir de la simple observación. *Íd.*, a las págs. 436-437. Véanse, además, *Harris v. United Sted*, 390 U.S. 234 (1984); *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *United States v. Lee*, 274 U.S. 559 (1927).

Tiempo después, nuestro Alto Foro en *Pueblo v. Cruz Torres*, 137 DPR 42, 50 (1994), resolvió —al reiterar esta doctrina— que un registro sin orden judicial no se apartó de los parámetros constitucionales, toda vez que se tenía conocimiento y certeza de la existencia de la evidencia delictiva (droga narcótica), ya que la misma había estado a plena vista con anterioridad a ser depositada por el acusado en el compartimento de la motora.[7] Posteriormente,

---

[7] La opinión concurrente emitida por la Jueza Asociada Naveira de Rondón contextualizó que, "el agente tenía derecho previo a estar en la posición mediante

en *Pueblo v. Báez López*, 189 DPR 918, 944 (2013), nuestro Tribual Supremo extendió esta doctrina a aquellas situaciones en las cuales se identificó un objeto por medio del tacto, de conformidad con el siguiente pronunciamiento:

> *El juzgador debe sopesar el hecho de que existen objetos que son fácilmente reconocibles, pues tienen una consistencia y forma distintivas. Más aún, el entrenamiento y experiencia de los agentes del orden público les permite reconocer e identificar tales objetos a través de su sentido del tacto de la misma forma que identifican un objeto mediante el sentido de la vista. U.S. v. Pace, 709 F.Supp. 948, 955 (C.D. Cal. 1989), confirmado en 893 F.2d 1103 (9no Cir. 1990) ("objects have a distinctive and consistent feel and shape that an officer has been trained to detect and has previous experience in detecting, then touching these objects provides the officer with the same recognition his sight would have produced").*

No obstante, esta doctrina no opera de modo automático. El tribunal debe evaluar los intereses presentes frente a la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada. *Pueblo v. Yip Berríos*, 142 DPR 386 (1997); *Pueblo v. Lebrón*, 108 DPR 324, 331 (1979). Además, en ausencia de orden judicial, le corresponde al Ministerio Público el peso de la prueba para establecer la validez y la legalidad de la intromisión estatal. *Pueblo v. Calderón Díaz, supra*, a la 557. Sin embargo, si el Estado no cumple con la carga probatoria, entonces procede aplicar la doctrina del fruto del árbol ponzoñoso, que permite suprimir aquella evidencia obtenida como resultado de registros, allanamientos y detenciones ilegales de un vehículo. *Pueblo v. Fernández Rodríguez*, 188 DPR 165, 183-184 (2013)

## c.

La Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II R. 234, instaura el vehículo procesal adecuado para cuestionar la razonabilidad de un registro efectuado sin orden de judicial en

---

la cual observó el objeto a plena vista, ya que estaba haciendo uso de su libertad de movimiento en un lugar público, mientras realizaba una investigación relacionada con el trasiego de drogas". *Pueblo v. Cruz Torres, supra*, a las págs. 53-54. Véase, también, *Pueblo v. Corraliza Collazo*, 121 DPR 244, 247 (1988).

contravención a las garantías constitucionales. *Pueblo v. Apolinar Rondón, supra,* a la pág. 15 esc. 4. En virtud de esta disposición, una persona tiene la facultad de peticionar la supresión de evidencia material (objetiva) y testifical antes del juicio. *Pueblo v. Blase Vázquez,* 148 DPR 618, 628 (1999). En esa línea, la parte promovente de esta solicitud no debe conformarse con meramente aludir al inciso aplicable, sino que debe expresar con especificidad y precisión los hechos en los que se basa y justifica su petición. *Pueblo v. Álvarez De Jesús,* 214 DPR 753, 767 (2024); *Pueblo v. Rolón Rodríguez,* 193 DPR 166, 183 (2015).

No obstante, al cuestionarse la validez de un arresto o registro sin orden, le compete al Ministerio Público el peso de la prueba para establecer legalidad de la intromisión estatal. *Pueblo v. Calderón Díaz, supra,* a la 556. Sobre este particular, el Tribunal Supremo de Puerto Rico ha incorporado la siguiente normativa:

> *Reiteradamente, esta Curia ha resuelto que la presunción de invalidez beneficia al acusado y obliga al Ministerio Público a presentar evidencia para demostrar la legalidad y razonabilidad de la actuación del Estado. Así, pues, recae sobre el Estado el peso de la prueba para demostrar que los hechos particulares del caso justificaban la intervención policial. Esto quiere decir que en la vista evidenciaria para adjudicar la moción de supresión de evidencia, el Ministerio Público tiene la obligación de presentar prueba y persuadir sobre la razonabilidad del registro o el arresto. Por lo tanto, si el Ministerio Público tuvo la oportunidad de presentar prueba sobre los motivos fundados para arrestar y no lo hizo, la presunción de que el arresto fue ilegal permanece; "el arresto tiene que ser considerado ilícito, y la prueba obtenida mediante éste tiene que suprimirse". Permitir un arresto o registro de acuerdo con una orden de un policía, sin la intervención judicial y sin que luego un tribunal pueda escuchar prueba y pasar juicio sobre motivos fundados, abriría peligrosamente las puertas a registros ilegales irrazonables y arbitrario. Pueblo v. Nieves Vives,* 188 DPR 1, 17-18 (2013); *Pueblo v. Serrano Reyes,* 176 DPR 437, 443 (2009).

Por consiguiente, al examinar una solicitud de supresión de evidencia en la que se plantea que la evidencia obtenida fue el resultado de un arresto ilegal, el Ministerio Público está obligado a demostrar la legalidad de tal arresto. *Pueblo v.*

*Nieves Vives, supra,* a la pág. 17; *Pueblo v. Serrano Reyes, supra,* a la pág. 449. Sin embargo, si el Estado no demuestra la validez de su intervención, entonces procede ordenar la supresión de la evidencia, según lo permite la Regla 234 de Procedimiento Criminal, *supra.*

**D.**

En nuestro esquema probatorio, el testimonio estereotipado es aquel que se limita a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlo. *Pueblo v. Acevedo Estrada,* 150 DPR 84, 93 (2000); *Pueblo v. Rivera Rodríguez,* 123 DPR 467, 480 (1989). Por tanto, el uso de declaraciones estereotipadas por cualquier tipo de testigo debe ser objeto de riguroso escrutinio para evitar que declaraciones falsas o inexactas vulneren los derechos de personas inocentes. *Pueblo v. Acevedo Estrada, supra,* a la pág. 93; *Pueblo v. Camilo Meléndez,* 148 DPR 539, 558 (1999). En tales casos, el juzgador de los hechos debe examinar el testimonio a tenor con los siguientes criterios, a saber:

> *1. Debe ser escudriñado con especial rigor.*
>
> *2. Tanto los casos de "la evidencia abandonada" o de "lanzada al suelo" como los casos del "acto ilegal a plena vista" deben, en ausencia de otras consideraciones, inducir a la sospecha de la posible existencia de testimonio estereotipado.*
>
> *3. Cuando el testimonio es inherentemente irreal o improbable debe rechazarse.*
>
> *4. El testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles.*
>
> *5. La presencia de contradicciones o de vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones. Pueblo v. Camilo Meléndez, supra,* a la pág. 559 (citando a *Pueblo v. González del Valle,* 102 DPR 374, 376 (1974)).

No obstante, si el testimonio impugnado supera el análisis que antecede, entonces merecerá credibilidad por parte del foro primario, y en consecuencia, ameritará la deferencia por parte del tribunal revisor. Esta deferencia se extiende tanto a la adjudicación de credibilidad que el tribunal realiza sobre los testigos que declaran, así como a las determinaciones de hechos formuladas por el juzgador. *Pueblo v. Negrón Ramírez*, 213 DPR 895, 911 (2024); *Pueblo v. Toro Martínez*, 200 DPR 834, 858, 858 (2018). Por ende, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, los foros apelativos debemos abstenernos de intervenir en la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el tribunal recurrido. *Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024 (2024); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022). Véanse, también, *Pueblo v. Negrón Ramírez*, *supra*, a la pág. 912; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020).

**III.**

De entrada, establecemos que, de conformidad con los criterios recogidos en la Regla 40 del Tribunal de Apelaciones, *supra,* este foro intermedio apelativo se encuentra en posición de expedir el auto solicitado. En virtud de la discreción que ostentamos, procedemos a resolver la controversia ante nuestra consideración.

Luego de un análisis sosegado del expediente, a la luz del derecho vigente, resolvemos que el TPI actuó correctamente al denegar la solicitud de supresión de evidencia promovida por el peticionario. Adelantamos que el Estado cumplió con la carga probatoria al sostener la legalidad de la detención, así como del registro del automóvil del peticionario, a la luz de los testimonios presentados. Veamos.

Surge del expediente ante nos que, el foro primario celebró una vista el 4 de febrero de 2026 para atender la moción de supresión de evidencia radicada por el peticionario. En síntesis, durante dicho procedimiento, el agente Ricardo Vázquez Nieves declaró que el 27 de junio de 2025, transitaba en el pueblo de Moca, en específico el barrio Capá, como parte del patrullaje preventivo anticrimen.[8] Precisó que aproximadamente a las 11:00 de la noche se encontraba en la gasolinera Gulf (carretera 111), la cual estaba adecuadamente iluminada[9], para realizar una parada técnica, es decir, para acudir a las facilidades sanitarias de este establecimiento.[10] No obstante, allí contempló al peticionario, quien empezó a retroceder en un vehículo de motor (marca Jeep) sin hacer uso del cinturón de seguridad.[11] De acuerdo con su testimonio, el policía le indicó al Sr. Torres Cardona que usara el cinturón de seguridad, sin embargo, hizo caso omiso a esta directriz.[12] Por tanto, el agente manifestó que le ordenó a que se detuviera, pero este continuó retrocediendo y salió a toda prisa del lugar.[13]

A raíz de tales circunstancias, el agente Vázquez Nieves se comunicó con el agente Erick González Barreto, quien se encontraba cerca de la gasolinera para que siguiera la ruta del Sr. Torres Cardona.[14] En cuanto a este particular, el agente González Barreto confirmó que se encontraba informado respecto a la infracción vehicular del Sr. Torres Cardona.[15] Por ende, relató que procedió a seguir el vehículo de motor del peticionario, quien conducía sin detenerse y sin reducir la velocidad, según precisó en

---

[8] 0:04:48 a 0:04:56 de la Regrabación de la Vista de Supresión de Evidencia.
[9] 0:06:46 a 0:06:55 de la Regrabación de la Vista de Supresión de Evidencia.
[10] 0:04:48 a 0:04:56 de la Regrabación de la Vista de Supresión de Evidencia.
[11] 0:07:00 a 0:07:35 de la Regrabación de la Vista de Supresión de Evidencia.
[12] 0:07:44 a 0:08:05 de la Regrabación de la Vista de Supresión de Evidencia.
[13] 0:08:22 a 0:10:30 de la Regrabación de la Vista de Supresión de Evidencia.
[14] 0:10:31 a 0:10:59 de la Regrabación de la Vista de Supresión de Evidencia.
[15] 0:38:48 a 0:40:99 de la Regrabación de la Vista de Supresión de Evidencia.

su testimonio.[16]  Así las cosas, el agente González Barreto detalló que tras 20 minutos aproximadamente de perseguir el vehículo de motor del Sr. Torres Cardona, notó que este se internó hacia una zona boscosa en donde impactó un árbol y una verja.[17]  Allí finalmente, este último abandonó su automóvil y salió corriendo, pero fue intervenido por el agente González Barreto, quien le comunicó las advertencias de rigor y le informó que lo detenía por obstrucción a la autoridad pública.[18]  Por último, como parte de sus funciones de seguridad, manifestó que se movilizó hasta donde se encontraba el automóvil del peticionario para cerciorase que no hubiera una persona afectada por el accidente.  Allí contempló que el vehículo de motor tenía la puerta del conductor abierta y la llave puesta.[19]  No obstante, cuando se acercó al área delantera del asiento del pasajero, el agente indicó que observó inadvertidamente una carterita negra abierta y varias bolsitas que contenían polvo granulado en su interior con apariencia de cocaína.[20]

Ante este cuadro fáctico, colegimos que los agentes actuaron amparados en los motivos fundados que justificaban tanto la detención como el registro del automóvil.  Veamos.

En primer lugar, precisamos que el arresto sin orden judicial no vulneró las garantías constitucionales que amparan al acusado, ni denotó arbitrariedad por parte del Estado.  Ello, pues el agente González Barreto actuó a base de la información proporcionada por el agente Vázquez Nieves, es decir, el motivo fundado transferido por el agente Vázquez Nieves.  Véase, *Pueblo v. Luzón, supra*, a las págs. 324-325.  A su vez, procedió a tenor con el conocimiento directo que tuvo de los hechos.  Por consiguiente, razonamos que el Ministerio Público cumplió con su carga probatoria al sostener la

---

[16] 0:42:58 a 0:43:11 de la Regrabación de la Vista de Supresión de Evidencia.
[17] 0:43:21 a 0:44:23 de la Regrabación de la Vista de Supresión de Evidencia.
[18] 0:44:50 a 0:45:56 de la Regrabación de la Vista de Supresión de Evidencia.
[19] 0:46:00 a 0:46:59 de la Regrabación de la Vista de Supresión de Evidencia.
[20] 0:47:37 a 0:49:20 de la Regrabación de la Vista de Supresión de Evidencia.

validez y la razonabilidad de esta intervención, a la luz de los testimonios de ambos agentes.

Atendido lo anterior, nos compete, en segundo lugar, examinar la validez del registro sin orden judicial. Tras escuchar detenidamente la regrabación de la vista, notamos que el agente González Barreto precisó que se dirigió al área donde estaba al automóvil del Sr. Torres Cardona, para constatar si había una persona en su interior como resultado del accidente vehicular. No obstante, al iluminar el automóvil, dicho agente identificó, por inadvertencia, varias bolsas que contenían polvo blanco, lo cual activó el motivo fundado para efectuar el registro. Según el testimonio del agente mencionado, el polvo contenido en las bolsas tenía apariencia de cocaína. En ese sentido, la fiscalía evidenció que opera la doctrina de evidencia ocupada a simple vista. En particular, el Ministerio Público demostró adecuadamente que: (1) las bolsas ocupadas fueron descubiertas a plena vista: (2) el agente tenía derecho a estar en la posición desde la cual podía verse tal prueba; (3) este descubrió inadvertidamente las bolsas; y (4) la naturaleza delictiva del objeto ocupado surgía a la simple observación. Véanse, *Pueblo v. Dolce Cabán, supra*; *Pueblo v. Cruz Torres, supra; Pueblo v. Báez López, supra.* De conformidad con este análisis, determinamos que el Estado derrotó la presunción de ilegalidad que revestía al registro sin orden, pues demostró mediante hechos concretos que aplica la doctrina de evidencia a simple vista al presente caso.

En vista de lo expuesto, reiteramos que los testimonios de ambos agentes respaldan la validez de la detención y el registro aquí impugnados. La evidencia testimonial proporciona detalles pertinentes, específicos y concordantes en cuanto al tiempo, el espacio y la distancia que rodean a este caso, así como información relevante en cuanto la conducta desplegada por el Sr. Torres

Cardona. Así precisado, puntualizamos que sus testimonios se distancian de versiones estereotipadas y desinformadas, pues proveen información detallada en torno a la intervención policial, permiten corroborar la existencia de los motivos fundados, y evidencian la legalidad de los procedimientos. Véase, *Pueblo v. Camilo Meléndez, supra,* a la pág. 559.

En virtud de lo anterior, concluimos que el foro primario actuó correctamente al denegar la moción de supresión de evidencia promovida por el peticionario. Por tanto, confirmamos la determinación recurrida, pues no refleja prejuicio, parcialidad, o pasión, ni error manifiesto en la interpretación o la aplicación de normativa jurídica sustantiva o procesal aplicable por parte del foro primario

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de esta Sentencia, expedimos el auto de *Certiorari,* y confirmamos la Resolución notificada el 12 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla. Por el resultado al que hemos llegado, declaramos No Ha Lugar la petición de auxilio de jurisdicción presentada por el Sr. Luis Torres Cardona. Se devuelve el caso al foro primario para la continuidad de los procedimientos.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones